*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TURNER, Minors.

UNPUBLISHED
July 18, 2019

No. 345416
Oakland Circuit Court
Family Division
LC No. 2016-839914-NA

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her two sons, MT and BT, under MCL 712A.19b(3)(g) and (j).[1] We affirm.

## I. BACKGROUND

Before their removal, MT and BT lived with respondent and her live-in boyfriend, David Glusac. Despite not being the children's biological father, Glusac had functioned as the children's father figure since MT and BT's infancy. The home, however, was host to multiple incidents of domestic violence and chronic substance abuse. Three incidents in particular led to the children's removal from respondent's care.

First, in May 2015, respondent was arrested on a bench warrant for a previous charge of operating while intoxicated. When officers arrived at the home, respondent fled on foot with BT. Respondent was highly intoxicated during the incident. Second, in September 2015, respondent was arrested for domestic violence after she chased Glusac out of the family home with a knife and damaged several household items. Respondent's blood alcohol concentration (BAC) at the time was 0.199. Respondent was offered weekly substance-abuse treatment but continued to

---

[1] The trial court also terminated the parental rights of the children's father, with whom the children have never had any meaningful contact. The children's father is not a party to this appeal.

drink alcohol. Finally, in January 2016, respondent tested positive for alcohol consumption at her substance-abuse treatment, which constituted a violation of her bond. That night, while the children were present, respondent was arrested for assault and battery and resisting or obstructing a police officer. Following this third incident, the children were removed from respondent's care.

The trial court assumed jurisdiction over the children and ordered respondent to comply with a treatment plan which required her to participate in substance-abuse and counseling services—including Alcoholics Anonymous—and provide documentation of those services to petitioner, to complete a parenting class, and to maintain employment. Respondent initially submitted to an inpatient treatment program but was released from the program after she injured her knee. Afterwards, respondent received individual therapy through Easter Seals.

Respondent underwent surgery for her knee injury in late May 2016. A couple weeks later, respondent suffered a blood clot and was prescribed 60 pills of Oxycodone to manage her pain. Respondent did not inform the doctor that she had a substance-abuse issue. Two days after being prescribed the pills, respondent overdosed on Oxycodone. Responding officers reported that there were no pills left in the Oxycodone bottle and that respondent's home was in disarray. Respondent was only partially clothed and officers noticed a white substance around her mouth; when paramedics attempted to assist respondent, she hit and kicked them. Eventually respondent was restrained with tie-downs and handcuffs. Between late May and late June 2016, respondent tested positive for alcohol,[2] Hydrocodone, or other opiates at 14 drug screens and failed to attend 19 screens.

In July 2016, respondent attended a visit with the children and had a black eye. Respondent reported that Glusac's former girlfriend had attacked her and the caseworker ended the visit when respondent tried to talk about the altercation with the children. Respondent completed a parenting class in August 2016, but did not appear to benefit from it. Indeed, in September 2016, respondent attended a visit with the children under the apparent influence of alcohol and cried hysterically about leaving Glusac. Caseworkers implored respondent to refrain from discussing her relationship with Glusac in front of the children, but respondent kept trying to discuss the subject with the caseworker. That same month, respondent was arrested for another incident of domestic violence after she threatened to cut Glusac's throat. Respondent was not released from custody until June 2017.

By early 2017, petitioner had filed a supplemental petition to terminate respondent's parental rights to the children. Hearings on the petition were held between March 2017 and July 2018. In July and August 2017, respondent tested positive for cocaine. Jail conversations between respondent and Glusac revealed that Glusac was also using cocaine on weekends. In September 2017, respondent and Glusac became engaged while on vacation in Chicago; the couple married before the conclusion of this case. Respondent had asked petitioner for permission to take the trip to Chicago, but petitioner denied respondent permission to do so.

---

[2] Testimony at trial indicated that an alcohol screen is positive only when the subject's BAC is greater than 0.08.

Respondent attended anyway and missed a drug screen. Indeed, missed or positive drug and alcohol screens remained an issue for respondent through the conclusion of this case. In addition to the aforementioned screens positive for cocaine use, respondent tested positive for alcohol in August 2017, November 2017, and February 2018, tested positive for codeine in January 2018, and failed to appear for screens in October 2017, November 2017, January 2018, and March 2018.

Respondent denied using alcohol or cocaine—claiming the screens were unreliable[3]—but admitted to using codeine cough syrup with a valid prescription; respondent, however, could not answer why she agreed to take an opiate given her substance-abuse history. By the conclusion of this case, respondent had become gainfully employed and had health insurance. Because respondent had health insurance, petitioner informed respondent that she was responsible for seeking her own therapy. Petitioner encouraged respondent to enter therapy numerous times and respondent appears to have received case-management services from Easter Seals from July through September 2017. Respondent, however, never provided verification of these services to petitioner. Moreover, respondent did not consistently attend Alcoholics Anonymous or Narcotics Anonymous, instead choosing to address her sobriety through friends. Petitioner referred respondent for substance-abuse counseling in the spring of 2018, but respondent was denied services after she informed the provider that she had not used alcohol in more than a year.

Following the initial removal, petitioner placed the children with a maternal aunt, to whom MT reported that respondent had previously physically abused him. MT made a similar revelation to a therapist, claiming that respondent pushed him against a wall. BT told the therapist that respondent had chased Glusac and MT around the house with a knife.

Due to scheduling conflicts with the children's aunt, petitioner moved the children to non-relative foster care in July 2018. The children's caseworker reported that, when they were first placed with the foster mother, the children tended to be aggressive with each other and lacked basic daily-living skills such as bathing, using utensils, and sitting at a table. The foster family, however, worked hard to introduce structure to the children's lives and, by the end of this case, the children's behavior had improved. The boys each made their own beds, cleared their own plates, and completed their homework. BT's self-esteem had improved and MT was respecting adults and making friends. The children called their foster mother "mom" and her partner "dad" and the foster mother was willing to adopt the children.[4]

---

[3] There is some evidence that one testing clinic had a history of unreliably reporting missed screens, but there is no evidence that the clinic's actual test results were unreliable as related to the substances at issue in this case.

[4] Despite a Department of Child Welfare Licensing (DWCL) rule preventing foster children from being placed in homes with fostered adults, two fostered adults with disabilities also lived in the children's foster home. Although the rule was overlooked at placement, by the end of the case, petitioner's caseworker indicated that she would be applying for a variance so the children could remain in the home. The trial court opined that, given the children's bond to the foster family, DWCL was likely to approve the variance.

The children received therapy throughout this case, but had difficulty making progress given the uncertainty surrounding their placement. The children's therapist reported that they would not begin to make significant therapeutic gains until a permanent decision was made in this case. The children were bonded to respondent and BT in particular was experiencing guilt over not being able to prevent respondent's substance abuse or their removal. Still, however, when the children were informed about respondent's June 2017 release, their behavior quickly deteriorated. Because of respondent's incarceration and the effect her presence had on the children, respondent's last visit with the children was in September 2016. Their therapist testified that, although terminating respondent's parental rights would be difficult initially for the children, eventually the termination would provide the children with the permanency they needed to adequately address their mental health.

In January 2018, the trial court found statutory grounds to terminate respondent's parental rights to the children under MCL 712A.19b(3)(g) and (j). The trial court concluded that respondent did not grasp her substance-abuse problem—as indicated by respondent's failure to reveal her issues to her knee doctor before receiving opiates for her pain management—and that respondent's substance abuse was still an issue. The trial court was especially troubled by the fact that respondent's alcohol and drug consumption often resulted in violent outbursts which repeatedly landed respondent in jail or the hospital and noted the emotional harm respondent had caused the children.

Then, in August 2018, the trial court addressed the children's best interests. The trial court acknowledged the children's bond to respondent, but noted that the children also had a strong bond with their foster family. The trial court noted that the children lacked structure in respondent's home and were making significant improvements in their behavior, hygiene, and social skills with their foster family. The trial court found that respondent was unlikely to maintain sobriety and that further delaying the conclusion of this case would cause the children undue stress. Accordingly, the trial court found that termination was in the children's best interests. This appeal followed.

II. ANALYSIS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Once a ground for termination is established, the trial court must order termination of parental rights if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); MCL 712A.19b(5). "We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); see also MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Respondent first argues that statutory grounds did not exist to terminate her parental rights. As already noted, the trial court found that statutory grounds existed to terminate

respondent's parental rights under MCL 712A.19b(3)(g) and (j), which provide that the trial court may terminate a parent's rights in either of the following situations:

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[5]
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The central take-away from this case is that respondent continues to struggle with substance abuse. When respondent drinks alcohol or consumes opiates (either prescribed or not), she is unable to stop until she is severely intoxicated. While intoxicated, respondent is belligerent, violent, and prone to angry outbursts. Respondent's substance use has traumatized her children and nearly caused respondent's death. Respondent has attacked her now-husband on several occasions and at least one child has reported that respondent physically abused him. Despite being incarcerated as a result of her substance use and despite not having any contact with her children since September 2016, respondent was still returning positive drug screens near the conclusion of this case and had yet to complete substance-abuse treatment. It is apparent that respondent failed to grasp the severity of the issue as respondent twice failed to inform her doctors about her addictions before they prescribed her opiates. Accordingly, it is unlikely that respondent will be able to overcome or manage her addictions within any reasonable time.

In short, while respondent may have been an adequate parent when sober, respondent's substance-abuse prevented her from providing for her children's needs and rendered her home a danger to her children's physical and emotional well-being. The trial court's finding that statutory grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(g) and (j) was not erroneous.[6]

---

[5] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018, to require the trial court to inquire into the parent's financial ability to provide proper care or custody. See 2018 PA 58. Because the trial court's statutory-grounds findings were made before the effective date of amendment (despite issuing its final order following the best-interest hearing after the effective date of amendment), the new version of MCL 712A.19b(3)(g) is inapplicable to this case. In any event, respondent's financial ability to provide for the children was not the reason for termination; rather, the trial court noted that "the sole issue in this case is [respondent's] emotional equilibrium and sobriety."

[6] Respondent argues that little in this case has changed since the adjudication. We agree, as did the trial court. Respondent argues that this continuity prevented the trial court from finding clear and convincing evidence that a statutory ground existed to terminate her parental rights.

Respondent also argues that termination was not in her children's best interests. We disagree. Respondent claims that the trial court failed to consider that she had "shed herself of her legal problems and drug-addictive behavior" and failed to consider that she had rebuilt her relationship with Glusac. Regarding the former, respondent's recent positive drug screens and failure to complete substance-abuse treatment belies her assertions of sobriety. As to the latter, Glusac suffered from his own sobriety issues and, despite his presence in the family home—which the trial court opined was a largely positive influence in the children's life—the children still lacked basic life skills at the time of their removal.

Respondent is correct that a bond exists between her and the children. Nonetheless, because of respondent's failure to address her substance abuse, respondent has not seen the children since September 2016. Although respondent has undoubtedly sought time with the children, her presence stressed the children and caused their behavioral issues to return. In contrast, the children were learning structure, manners, and self-sufficiency with their foster family. As the trial court noted, the children were bonded with their foster family and called their foster parents "mom" and "dad."

Perhaps most importantly, the children's therapist opined that the children would not be able to adequately address the trauma respondent caused them until this case was resolved. Given that respondent was unlikely to address sufficiently her substance abuse so that she could provide her children with a safe, appropriate home, we agree with the trial court that termination—rather than prolonged foster care—was in each child's best interests.

---

According to respondent, where the trial court found by a preponderance of the evidence that statutory grounds existed to assume jurisdiction, it could not then find by clear and convincing evidence that statutory grounds existed to terminate her parental rights if little changed before the termination hearing. Respondent's logic, however, is backward. The clear-and-convincing-evidence standard is more stringent than the preponderance standard. Accordingly, had the trial court found that petitioner *did not* meet the preponderance burden at the initial adjudication, this finding would have foreclosed petitioner from meeting the more-stringent clear-and-convincing-evidence burden. That petitioner *did* prove its case for adjudication, however, has no necessary effect on the trial court's clear-and-convincing-evidence ruling. Indeed, petitioner could simultaneously meet both standards. At adjudication, the trial court was not required to address the clear-and-convincing-evidence standard; therefore, its preponderance finding does not indicate that clear and convincing evidence did not exist to terminate respondent's parental rights at the initiation of this case.

Moreover, we note that, although respondent's behavior has not significantly changed since adjudication, the passage of time is itself a material change. MCL 712A.19b(3)(g) and (j) take into account the likelihood that the respondent will be able to provide a safe, appropriate home for the children in the future. The passage of more than a year without respondent making any significant strides in her sobriety is evidence that she will not be able to maintain sobriety in the future.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens